**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| AYODEJI OSHIKOYA AND<br>KEVIA WILSON, individually and on<br>behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEIDOS HEALTH, LLC,<br>Defendant. | Civil Action No. 1:17-cv-03237-RLM-DM |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**

**I.   INTRODUCTION**

Plaintiffs Ayodeji Oshikoya and Kevia Wilson (together, "Plaintiffs") hereby submit their unopposed motion for approval of attorneys' fees and costs in the above-captioned case. As set out further below, Plaintiffs' request of 33% of the gross settlement amount in this case for both fees and costs is both commonly accepted by courts in the Seventh Circuit and in alignment with the Plaintiffs' fee agreements. The fee requested is fair compensation to Class Counsel for the work they have performed and the costs that they have incurred to date, including the extensive work and cost associated with their administering the settlement and achieving a laudable 90% response rate. In addition, it recognizes the continued work which Class Counsel will have to perform in order to finalize the settlement and assure payment of shares to the many class members.

The fee requested appropriately compensates Class Counsel for the excellent result they have achieved on behalf of the Settlement Class Members. In this settlement, the highest award is $29,000,00 and more than 100 people will be receiving shares in excess of $10,000.00. In addition, Class Counsel have been able to secure an incredibly high claims rate, with 89.6% of the settlement

1

fund claimed. Finally, one of the terms negotiated by Class Counsel in this settlement is that Leidos consultants have been reclassified as W-2 employees starting in January 2019, and will be eligible for overtime compensation. In sum, Class Counsel have worked diligently throughout the duration of this case to reach a favorable settlement and to ensure that as many Settlement Class Members as possible were able to take part in it. For these reasons, Plaintiffs' Motion for Fees and Costs should be granted. While Class Counsel recognize that settlement was achieved before any dispositive motion practice, they believe that their efforts to successfully settle the case earlier, rather than later in the case, should not serve as a reason to lower the approved fee, and that courts should not create a perverse incentive for firms to seek to achieve higher fees by just billing for time and work that may not have been really necessary except to increase their lodestar.

## II.     FACTUAL BACKGROUND

This case was originally filed in August 2017, nearly two years ago. See Complaint, Dkt. 1. Since then, Class Counsel have worked diligently to bring about the result ultimately achieved in this case. Class Counsel submitted a Motion for Conditional Certification (Dkt. 55), and filed a detailed brief in opposition to Leidos' Motion to stay the briefing on conditional certification in order to conduct discovery. Dkt. 70. In subsequent months, the parties completed written discovery – Class Counsel responded to discovery requests to the Plaintiffs and opt-ins; and spent hours reviewing and analyzing 49,000 pages of documents produced by Leidos. See Declaration of Harold Lichten (Lichten Decl.), attached hereto as Exhibit 1, ¶ 5. At the close of written discovery, and nearly a year after the case began, the parties agreed to explore mediation. See Stipulation and order to Stay Litigation, Dkt. 109.

The parties first participated in a full-day mediation session before Carole Katz, Esq. on July 31, 2018. Lichten Decl. ¶ 7. Ahead of the mediation, Class Counsel prepared a detailed

analysis of payroll data provided by Leidos and put together a damages estimate. Id. This mediation did not result in settlement, and the parties continued their discussions over the next several months, ultimately reaching agreement to attend a second full-day mediation before Anne-Marie Estevez, Esq. on October 9, 2018. Id. at ¶ 8. Ahead of this second mediation session, Class Counsel reviewed additional data provided by Leidos, and prepared an updated damages estimate. Id. This mediation session resulted in a proposed settlement term sheet that then had to be reduced to a detailed settlement agreement. See Settlement Agreement, Dkt. 132.02.

On March 11, 2019, the Court granted preliminary approval of the settlement. Dkt. 138. In the following weeks, Class Counsel worked diligently to administer notice. They verified contact information for Settlement Class Members, calculated settlement shares, and prepared individualized notices of settlement. Lichten Decl. ¶ 9. On April 5, 2019, Class Counsel sent out notice by mail and e-mail to the 1079 Settlement Class Members Id. at ¶ 10. Of the notices initially mailed out, 65 came back as undeliverable; after WestLaw searches for updated addresses, 29 came back as undeliverable. Id. at ¶ 11. On May 6, 2019, Class Counsel sent out a reminder notice, by first class mail and e-mail, to the individuals who had not yet submitted claim forms. Id. ¶ 12. In the following weeks, in an effort to further increase participation Plaintiffs' Counsel sent a follow-up e-mail and placed phone calls to individuals who had not yet claimed. Id. at ¶ 13. As a result of these efforts, 962 individuals have claimed in this settlement, accounting for 89.6% of the net settlement fund. Id. at ¶ 14. Class Counsel have received no objections and only five requests for exclusion. Id.

By administering the settlement in house and foregoing the use of third-party administrator, Class counsel have saved the class fund a significant amount of money, which will be available

for distribution to Settlement Class Members. Lichten Decl. ¶ 16. Class Counsel seeks no separate award or reimbursement for this work. Id. Should the Court grant final approval of the Settlement Agreement, Class Counsel will continue to work in the coming weeks to update Settlement Class Member contact information, distribute checks, and respond to Settlement Class Member inquiries. Id. at ¶ 15.

### III. ARGUMENT

In this case, Plaintiffs seek an award of attorneys' fees in the amount of $2,033,333.33 (representing one-third of the gross settlement amount), inclusive of Class Counsel's out-of-pocket costs and administration of the settlement. As explained further below, this request is reasonable in light of the work performed by Class Counsel to date, including the work involved in administering the settlement, as well as the result obtained by Class Counsel in this case - namely, a highly favorable settlement, and an extraordinarily high claims rate

The Supreme Court has held that a reasonable attorney's fee may be based on "a percentage of the fund bestowed upon the class." Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984). Thus, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Here, Class Counsel seek a settlement award of fees and costs of 33 percent of the common fund. This fee comports with the fee awards commonly approved in class actions in this Circuit and provides fair compensation to Class Counsel for their work in litigating this case, bringing it to a favorable resolution, and administering the settlement. Class Counsel have worked hard on this case over the past two years, and have brought it to a favorable resolution, with nearly 90% of Class Members taking part in the settlement, and recovering approximately 70% of their unpaid wages, and with Leidos

4

reclassifying its consultants to employees. For these reasons, the attorneys' fees requested by Plaintiffs in this case are reasonable, and should be approved.

### A. Percentage of the Fund Method is the Preferred Approach to Awarding Fees in the Seventh Circuit

In class actions such as this one, courts use one of two methods in awarding attorney's fees and costs to plaintiffs' counsel: the percentage of the fund method, or the lodestar method. See Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc., 743 F.3d 243, 247 (7th Cir. 2014); Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 566 (7th Cir. 1994).

Of these two, courts in the Seventh Circuit overwhelmingly favor the percentage of the fund approach. See In re Synthroid Marketing Litig., 325 F.3d 974, 979–980 (7th Cir. 2003). Under this approach, courts "compute attorney's fees as a percentage of the benefit conferred upon the class . . ." In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig., 280 F.R.D. 364, 379 (N.D. Ill. 2011). The percentage of the fund approach is "the most accurate reflection in this case of the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time . . ." In re Ready-Mixed Concrete Antitrust Litig., 1:05-CV-00979-SEB, 2010 WL 3282591, at *2 (S.D. Ind. Aug. 17, 2010). As this Court has explained, the percentage of the fund method "provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*. In re FedEx Ground Package System, Inc., Empl. Practices Litig., 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing In re Synthroid, 325 F.3d at 979–980.

Under the Seventh Circuit's market-driven approach, courts have recognized that "[t]he use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." Will v. General Dynamics Corp., 2010 WL 4818174, at *3 (S.D.Ill. Nov. 22, 2010), citing (Synthroid, 325 F.3d at 979–980). As explained in Schulte v. Fifth Third Bank, 805

5

F. Supp. 2d 560, n. 27 at 598 (N.D. Ill. 2011), "'[t]he client cares about the outcome alone' and class counsel's efficiency should not be used 'to reduce class counsel's percentage of the fund that their work produced.'" Id., quoting In re Comdisco Sec. Litig., 150 F.Supp.2d 943, 948 n. 10 (N.D.Ill.2001). The percentage of the fund approach is therefore appropriate in this case.

### B. A Fee Award of 33% Comports with the Fee Plaintiffs agreed to and Reflects the Common Market Rate for Contingency fee Arrangements

As the Seventh Circuit explained in Synthroid, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." 264 F.3d at 718. Here, the one-third fee award (inclusive of all costs and settlement administration) requested by Plaintiffs comports with their fee agreements, reflects the risks in this case, and is in line with fees awarded by other courts in this Circuit.

"The Seventh Circuit has held that district courts 'must set a fee by approximating the terms that would have been agreed to *ex ante,* had negotiations occurred.'" Gehrich v. Chase Bank USA, N.A., 316 F.R.D. 215, 235 (N.D. Ill. 2016) (quoting Americana, 743 F.3d at 246–47). In short, District Courts are required to "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." Sutton v. Bernard, 504 F.3d 688, 692 (7th Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases...." Taubenfeld v. AON Corp., 415 F.3d 597, 599 (7th Cir. 2005), quoting Synthroid, 264 F.3d at 718. Key to this approach is avoiding potential hindsight bias in decision making. See Synthroid, 264 F.3d at 718 (explaining that at a conclusion of case "hindsight alters the perception of the suit's riskiness" and a court's award should be based on "what happens in actual markets"). Market participants lack the benefit of hindsight.

The most important point of analysis is "the terms of the Plaintiffs' actual agreements" which are instructive in "approximating the terms that would have been agreed to *ex ante*." Synthroid, 264 F.3d at 719. In this case, Plaintiffs signed retainer agreements in which they agreed to pay a fee of one/third of the total recovery should the case be won or settled, and contingency agreements which call for a one-third fee are common. See Schulte, 805 F. Supp. 2d at 598 (approving attorneys'' fees in the amount of 1/3 of the settlement and noting that plaintiff authorized her attorney to seek a fee of up to 33.3% of her potential recovery); Pavlik v. FDIC, No. 10 C 816, 2011 WL 5184445, at *4 (N.D. Ill. Nov. 1, 2011) ("Based on the actual contingency fee agreements Plaintiffs' counsel signed with the two named plaintiffs, as well as the market data for fees in cases of this size, the Court finds that Plaintiffs' counsel are entitled to attorneys fees in the amount of 33 1/3% of the common fund."); Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc., No. 02-cv-1109, 2004 WL 768658, at *2 (S.D. Ill. Mar. 19, 2004) (explaining that the "first" benchmark "is the actual agreements negotiated by the named Plaintiffs and the Class Counsel prior to commencement of the litigation" and awarding 33 1/3% of the common fund).

In addition, fee requests similar to the one made by Plaintiffs here have routinely been approved by courts, particularly in employment cases. See Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (quoting Faican v. Rapid Park Holding Corp., No. 10 CV–1118, 2010 WL 2679903, at *2 (E.D.N.Y. July 1, 2010)) (awarding fee of 33%) ("a counsel fee of 33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action."); Castillo v. Noodles & Co., No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (awarding attorneys' fees of one-

third of the settlement fund in a FLSA collective class action); McCue v. MB Fin., Inc., No. 15 CV 988, 2015 WL 4522564, at *3-*4 (N.D. Ill. July 23, 2015) (awarding attorneys' fees of one-third in wage and hour settlement); Campbell v. Advantage Sales & Mktg. LLC, No. 1:09-CV-01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (awarding of one-third of settlement plus costs in FLSA collective action).see also Leung v. XPO Logistics, Inc., 326 F.R.D. 185, 201–02 (N.D. Ill. 2018) (awarding fee of one-third of the settlement fund and noting that such fees are standard); Bridgeview Health Care Ctr., Ltd. v. Jerryclark, No. 09 C 5601, 2015 WL 4498741, at *2 (N.D.Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action); Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am., No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding one-third of common fund in multimillion dollar TCPA class action); Retsky Family Ltd. P'ship v. Price Waterhouse LLP, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); Gaskill v. Gordon, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming attorneys' fee award of 38% of settlement fund).

### C.    A Fee Award of 33% Appropriately Reflects the Risks in this Litigation and the Result Achieved by Class Counsel

The fee award requested by Plaintiffs is appropriate given the risks in this case. Because "[c]ontingent fees compensate lawyers for the risk of nonpayment," the "greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." Silverman v. Motorola Solutions, Inc., 739 F.3d 956, 958 (7th Cir. 2013) (citing Kirchoff v. Flynn, 786 F.2d 320 (7th Cir. 1986)). Here, Class Counsel faced significant risks and made significant expenditures in the course of the two-year litigation. Specifically, Class Counsel faced the risk of the Court finding that the Settlement class members were, in fact, properly classified as independent contractors and were therefore not entitled to overtime. Even

if that hurdle was overcome, Class Counsel also faced the risk that the Court would find Settlement Cass Members to be exempt under the FLSA's computer exemption, and thus not entitled to overtime. Were this case to go forward, Class Counsel would face additional briefing on conditional certification, and then on class certification and decertification, and given that the class was spread over many different health care locations all over the United States, achieving nationwide class certification was by no means a foregone conclusion. In sum, there were many potential obstacles in this litigation that may have precluded or reduced the Settlement Class Members' recovery.

In addition, in this case, Plaintiffs and Settlement Class Members were represented by skilled and highly experienced legal counsel, who worked diligently on this case. As the Seventh Circuit recognized, the "client cares about the outcome alone". See Will, 2010 WL 4818174, at *3. That said, in hopes of obtaining the best outcome, plaintiffs will obviously consider the reputation and skill of counsel in enlisting their services. See In re Computron Software, Inc., 6 F. Supp. 2d 313, 323 (D.N.J. 1998) ("The quality of representation can be rewarded by considering the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."). In this case, "[c]lass counsel did not join this case at the eleventh hour; rather, they saw this case through from start (the filing of the suit) to finish (negotiating a highly favorable settlement), and they did so with the care and skill commensurate with their significant experience as lead counsel in other major class action litigations." Kolinek v. Walgreen Co., 311 F.R.D. 483, 502 (N.D. Ill. 2015).

As set out in Counsel's declarations, the Firms of Lichten and Liss-Riordan, Berger and Montague and Blanchard and Walker are highly experienced in class actions and wage and hour cases. See Lichten Decl., Dkt. 140.2, ¶ 2, Exhibit A. Schalman-Bergen Decl., Dkt. 140.3, ¶¶ 2-4; Declaration of Devid Blanchard ("Blanchard Decl."), attached hereto as Exhibit 2, ¶¶ 5-7. Attorney Lichten has focused his practice on independent contractor misclassification, and has represented Massachusetts, Connecticut and Vermont drivers in the FedEx multi-district litigation before this Court, and after remand back to their respective Federal Court. Lichten Decl., Dkt. Dkt. 140.2, ¶ 2. He also represented the FedEx drivers in the State of Maine, and more recently, in Pennsylvania, New York, and New Jersey (for time periods subsequent to the MDL classes). Id. All three firms have led the charge in litigating similar healthcare consulting cases around the country, achieving excellent results for consultants.[1] See Schalaman Bergen Decl., Dkt. 140.3, ¶ 4. For nearly two years, class counsel have worked on this case, to the exclusion of other potential work, spending 1,249 hours collectively on briefing, discovery, damages analyses, and ultimately, settlement administration. Lichten Decl., ¶ 19. Schalman-Bergen Decl., Dkt. 140.3, ¶ 11; Blanchard Decl., ¶¶ 11-12; Declaration of Jeffrey A. Macey ("Macey Decl."), attached hereto as Exhibit 3, ¶¶ 5,7. Exhibit 1.

---

[1] See Gerges v. Enterprise Systems Software, LLC d/b/a ESD, No. 3:15-cv-01816 (W.D. Ohio) (final approval granted for $3,500,000 settlement); Sanders v. CJS Solutions Group, LLC d/b/a The HCI Group, No. 1:17-cv-03809 (S.D.N.Y) (final approval granted for $3,240,000 settlement); Scolaro v. Rightsourcing, Inc., No. 8:16-cv-01083 (C.D. Cal.) (final approval granted for $310,000 settlement); Arrington, et al. v. Optimum Healthcare IT, LLC, No. 17-cv-03950-RBS (E.D. Pa.) (preliminary approval granted for $4,900,000 settlement); Carey v. Physician Technology Partners, LLC, No. 3:17-cv-00213 (S.D. Ohio) (final approval granted for $1,000,000 settlement); Braniff v. HCTec Partners, LLC, f/k/a HCTec, LLC, No. 3:17-cv-00496 (M.D. Tenn.) (final approval granted for $4,500,000 settlement ); Hatzey v. Divurgent, LLC, No. 1:17-cv-03237 (E.D. Va.) (final approval of $2,450,000 settlement); Adams v. NTT Data, Inc., No. 1:18-cv-01303 (D. Colo.) (preliminary approval granted for $575,000.00 settlement).

The result of this work is readily apparent. Class Counsel have achieved a settlement of 6.1 million, which provides consultants with approximately 70% of their unpaid overtime wages, and includes a provision in which consultants will be classified as employees by Leidos. Lichten Decl., Dkt. 140.2 ¶¶ 7-8. Tellingly, close to 90% of the class members have chosen to take part in the settlement, which provides an average award of more than $4,000.00.[2] Id. ¶ 15. In sum, Plaintiffs' Requested fee award appropriately awards Class Counsel for the risks they undertook and the results they achieved in this case.

      **D.**    **Although Unnecessary, a Lodestar Cross-Check also Supports Plaintiffs' Fee Request**

As noted above, the percentage of the fund approach is favored in the Seventh Circuit, and a lodestar cross-check is not required. See Cook v. Niedert, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach"); Williams, 658 F.3d at 636 ("consideration of a lodestar check is not an issue of required methodology"); Schulte, 805 F. Supp. 2d at 598, n. 27 (recognizing irrelevance of lodestar crosscheck); Will, 2010 WL 4818174, at *3 ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); However, application of a lodestar cross-check in this case supports Plaintiffs' fee request. Class Counsel have collectively spent 1294 hours on this case, for a collective lodestar of 487,188.00. See Lichten Decl., ¶ 19. Schalman-Bergen Decl., Dkt. 140.3, ¶ 11; Blanchard Decl., ¶ 11; Declaration of Jeffrey A. Macey ("Macey Decl."), attached hereto as Exhibit 3, ¶¶ 5,7. Exhibit 1.

---

[2] Since most of the Settlement Class Members worked only periodically (weeks at a time) for these health care facilities, the average payout of more than four thousand dollars, is a significant recovery.

11

The fee requested by Class Counsel creates a multiplier of 4.17, which is well within the range of multipliers commonly awarded in this Circuit and elsewhere.

Class action litigation is inherently risky and unpredictable, and courts have routinely awarded risk multipliers in line with the one in this case. See Williams v. Rohm and Haas Pension Pl, No. 04-0078-SEB, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), aff'd, 658 F.3d 629 (7th Cir. 2011), Dkt. 317-2 (where the lodestar calculation was $7.43 million and the fee award was $43.5 million, the multiplier was 5.85); In re Household Int'l ERISA Litig., No. 02 Civ. 7921 (N.D. Ill. Nov. 22, 2004); (where the court awarded 30% of the $46.5 million settlement fund, the multiplier was 4.8); In re Cenco, Inc. Secs. Litig., 519 F. Supp. 322, 327 (N.D. 111. 1981) (multipliers of 4 and 2); Arenson v. Bd. of Trade of City of Chi., 372 F. Supp. 1349, 1359 (N.D. 111. 1974) (multiplier of 4); In re Rite Aid Corp. Sec. Litig., 362 F. Supp. 2d 587, 589 (E.D. Penn. 2005) (multiplier of 6.96); In re Charter Commc'ns, Inc., Sec. Litig., No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.61). See also Beckman v. KeyBank N.A., 293 F.R.D. 467, 481-82 (S.D.N.Y 2013) (granting an approximately 6.3 multiplier); Steiner v. Am. Broad. Co., 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of approximately 6.85 "falls well within the range of multipliers that courts have allowed"); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar). See also Alba Conte, Attorney Fee Awards § 2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multipliers of 5 or 10 times the lodestar."). Accordingly, Class Counsel's fee request, producing a multiplier of 4.17, is consistent with Seventh Circuit principles and well within the range of fee multipliers in class action litigation in this Circuit and others.

### E. Plaintiffs' Request for Costs Should be Approved

Plaintiffs' request for costs which are included within the one-third fee request, in this case should be approved. In common fund cases, it is appropriate for courts to award costs so long as those costs requested comport with "expenses private clients in large class actions (auctions and otherwise) pay." In re Synthroid Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001). Here, Class Counsel seek an award of their actual out-of-pocket costs, including costs related to document production and review, mediations, and administering the settlement. The expenses incurred by Class Counsel are itemized in each firm's declaration. These costs are currently estimated at $25,615.18. Lichten Decl., ¶ 20. Schalman-Bergen Decl., Dkt. 140.3, ¶ 24; Blanchard Decl., ¶ 14; Macey Decl., ¶ 9, Exhibit 1. By administering this settlement in-house, Class Counsel have effectuated a significant cost savings that has left more funds available for distribution to the Settlement Class Members. Because the costs requested by Class Counsel are reasonable in the context of this case, they should be approved.

### IV. CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Attorneys' Fees and Costs.

Dated: July 2, 2019     Respectfully Submitted,

/s/Olena Savytska_____
Harold Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

David M. Blanchard
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Tel: (734) 929-4313
blanchard@bwlawonline.com

Jeffrey A. Macey
MACEY SWANSON LLP
445 North Pennsylvania Street, Suite 401
Indianapolis, IN 46204
Tel: (317) 637-2345
Fax: (317) 637-2369
jmacey@maceylaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I, Olena Savytska, hereby certify that on this 2nd day of July, 2019, I filed the foregoing document with this Court using the CM/ECF. This system sends notifications of such filing and service to all counsel of record.

                                                    /s/Olena Savytska  
                                                    Olena Savytska